IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **JAMAL WRIGHT,** | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-6420 |
| | : | |
| **MARIROSA LAMAS et al.,** | : | |
| | : | |
| Respondents. | : | |
| | : | |

## [PROPOSED] ORDER

**AND NOW** this _____ day of _____, 2018, upon consideration of the Joint Motion to Reopen Record and Issue Additional Findings, with good cause appearing, **IT IS ORDERED** that the Motion is **GRANTED**. After receipt of the July 31, 2018 Order of the Court of Common Pleas of Philadelphia County (ECF 99 at 2-8) declining to allow further proceedings in the matter of *Commonwealth v. Jamal Wright*, CP-51-CR-0710141-2000, notwithstanding this Court's previous Order and Judgment conditionally granting habeas relief to Mr. Wright, the Court has reviewed the parties' submissions and conducted an independent examination of the record in this matter. Based on that review and examination, the Court makes the following findings:

**I.  PROCEDURAL BACKGROUND**

    **A.  Mr. Wright's Conviction And Habeas Petition**

    1.    Petitioner Jamal Wright's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 was docketed in this Court on November 1, 2013.

    2.    Mr. Wright was charged with the July 31, 1999 shooting death of Thomas "Tee" Weldon. He was prosecuted in the Philadelphia Court of Common Pleas under docket number

CP-51-CR-0710141-2000. Mr. Wright was charged with his co-defendant, Yakee Bentley. He and Mr. Bentley were tried nonjury in the Philadelphia Court of Common Pleas before the Honorable Carolyn Engel Temin. Mr. Wright was represented by Paul George, Esq., and Thurgood Matthews, Esq.[1] Mr. Bentley was represented by Michael Wallace, Esq.

3. Both Mr. Wright and Mr. Bentley were convicted of first-degree murder. On November 8, 2001, Judge Temin sentenced Mr. Wright and Mr. Bentley to life imprisonment.

4. Mr. Wright pursued a direct appeal and state post conviction proceedings under the Post Conviction Relief Act, 42 Pa. C.S. § 9545. His conviction and sentence were affirmed at all levels of the Pennsylvania courts.

5. On October 29, 2013, Mr. Wright, acting *pro se*, submitted his habeas corpus petition to this Court. The petition was docketed on November 1, 2013.

6. After initial briefing and a Report and Recommendation recommending dismissal of the petition as untimely, the Court (Dalzell, J.) appointed Jonathan H. Feinberg, Esq., to represent Mr. Wright.

7. Thereafter, Mr. Feinberg submitted a memorandum of law arguing that the petition was timely filed under the doctrine of equitable tolling and that Mr. Wright's conviction and sentence should be vacated because his trial counsel provided ineffective assistance in violation of the Sixth Amendment.

8. Specifically, with regard to the claim of ineffective assistance of counsel, the memorandum of law argued that Mr. Wright's trial counsel failed to investigate and interview a

---

[1] Both Judge Temin and Mr. George are employed by the Philadelphia District Attorney's Office ("DAO" or "District Attorney's Office"). As noted below, *infra* § III, the Court is satisfied that respondents have appropriately screened off Judge Temin and Mr. George from the proceedings in this case and that, accordingly, there is no conflict of interest arising out of the DAO's continued participation in this litigation and no legal grounds to disqualify the DAO from prosecuting this case.

2

witness, Ms. Ebony Carter, who would have testified that (a) she was near the scene of the shooting of Mr. Weldon; (b) she observed the shooters fleeing the scene immediately after the shooting; (c) at the time of the crime, she knew Mr. Wright well; and (d) she did not observe Mr. Wright with the shooters fleeing the scene.

9. Mr. Wright's brief acknowledged that this claim had not been exhausted in the Pennsylvania state courts but argued that this lack of exhaustion was due to the ineffective assistance provided by his post conviction counsel, David Rudenstein, Esq.

**B.  Co-Defendant Bentley's Habeas Proceedings**

10. While Mr. Wright's habeas corpus petition was pending in this Court, his co-defendant, Yakee Bentley, represented by different counsel, filed in this Court a petition for writ of habeas corpus challenging his conviction. *See Yakee Bentley v. Marirosa Lamas*, No. 13-6045 (E.D. Pa.).

11. Mr. Bentley's habeas petition raised a similar claim as that asserted by Mr. Wright: that his trial counsel provided ineffective assistance in failing to investigate and call as a witness Ebony Carter.

12. On January 21, 2016, U.S. Magistrate Judge Timothy R. Rice, after full briefing and oral argument, issued a Report and Recommendation recommending that Mr. Bentley's habeas petition be granted and that his conviction be vacated on the ground that his counsel provided ineffective assistance with regard to Ebony Carter.

13. The Commonwealth initially filed objections to Magistrate Judge Rice's Report and Recommendation.

14. After the objections were filed, however, counsel for Mr. Bentley and the DAO entered into negotiations to resolve the case. As a result of those negotiations, the parties agreed

3

that Mr. Bentley's conviction and sentence would be vacated and that Mr. Bentley would enter in the Philadelphia Court of Common Pleas a guilty plea to third-degree murder and receive a sentence of no greater than 17 to 34 years imprisonment. No. 13-6045, ECF 80 at 1.

15.     On February 3, 2017, the Court (Smith, J.) approved the parties' agreement in Mr. Bentley's case and entered an Order vacating Mr. Bentley's conviction and sentence. Thereafter, on February 6, 2017, Mr. Bentley appeared in the Court of Common Pleas before the Honorable J. Scott O'Keefe and entered a negotiated guilty plea to third-degree murder for a sentence of 16-to-34 years' imprisonment (CP-51-CR-1201411-1999). No. 13-6045, ECF 84 at 1.[2]

## II. THE MERITS OF MR. WRIGHT'S HABEAS PETITION AND THE PARTIES' PROPOSED RESOLUTION OF THAT PETITION

16.     Mr. Wright's entitlement to habeas relief centers on the resolution of three issues: (1) whether Mr. Wright's petition was timely filed under the doctrine of equitable tolling; (2) whether the failure to exhaust Mr. Wright's ineffectiveness claims concerning the Ebony Carter testimony is excused by the ineffectiveness of his post-conviction counsel, Mr. Rudenstein; and (3) whether trial counsel was ineffective for failing to conduct pretrial investigation concerning Ebony Carter's testimony.

17.     As outlined below, with regard to the first issue, the parties agree, and the Court finds, Mr. Wright's petition was timely filed under the doctrine of equitable tolling. With regard to the second and third issues, the DAO does not contest at this time, and the Court finds, that the record is sufficient to establish that post-conviction counsel was ineffective in his failure to

---

[2] Although the agreed-upon disposition indicated a sentence of 17-34 years' imprisonment, Bentley ultimately pled guilty and received a sentence of 16-34 years' imprisonment.

litigate the ineffectiveness of trial counsel and that trial counsel was ineffective in failing to conduct pretrial investigation regarding Ebony Carter's testimony.

      **A.     Mr. Wright's Petition Is Timely Under The Doctrine Of Equitable Tolling.**

18.     Mr. Wright acknowledged in his briefing that his petition was filed after the deadline calculated under 28 U.S.C. § 2244(d). He argued, however, that his petition was timely filed under the doctrine of equitable tolling because his post-conviction counsel failed to alert him to the Superior Court's ruling affirming the denial of PCRA relief.

19.     On December 7, 2017, the parties in this matter appeared before U.S. Magistrate Judge Richard A. Lloret, to whom this Court had referred the habeas petition,[3] for an evidentiary hearing on the equitable tolling issue.

20.     The parties presented evidence at that hearing. In particular, Mr. Wright, through his own testimony and through his counsel's cross-examination of Mr. Wright's PCRA counsel, David Rudenstein, Esq., presented evidence tending to show that Mr. Wright did not receive notice concerning the Pennsylvania Superior Court's disposition of his appeal from the denial of PCRA relief.

21.     Mr. Rudenstein testified at the hearing that certain letters sent to Mr. Wright advised Mr. Wright of the outcome of the appeal. But Mr. Rudenstein acknowledged that he could not confirm that the letters were in fact sent to Mr. Wright. Further, Mr. Rudenstein acknowledged that each letter purportedly sent to Mr. Wright repeated the same advisories—showing Mr. Rudenstein's awareness that the letters were never sent to Mr. Wright.

---

[3] *See* 28 U.S.C. § 636(b)(1) (authorizing U.S. District Court to refer matters to Magistrate Judge for issuance of Report and Recommendation and providing that District Judge retains power to conduct *de novo* review of issues addressed in Report and Recommendation).

5

22. Based on the evidence established at the hearing, and as agreed by respondents, the record confirms that Mr. Wright did not receive notice of the Superior Court's disposition of his appeal and that he acted diligently to file his *pro se* habeas petition.

23. Under the doctrine of equitable tolling, *see Holland v. Florida*, 560 U.S. 631, 649 (2010), Mr. Wright's petition is timely filed.

24. Even if equitable tolling were not appropriate in this case, the statute of limitations issue is not jurisdictional, and the defense may be waived and/or abandoned. *Day v. McDonough*, 547 U.S. 198, 205-11 (2006). Given respondents' position, the Court finds that Mr. Wright's habeas petition is timely filed.

**B. The Record Supports A Finding That PCRA Counsel Was Ineffective.**

25. During the evidentiary hearing, the parties did not address any questions of exhaustion or the issue of PCRA counsel's ineffectiveness in failing to litigate the Ebony Carter issue through the Pennsylvania courts.

26. Mr. Wright's briefing has set forth a substantial record in support of the conclusion that Mr. Rudenstein was ineffective in failing to litigate this issue and that, accordingly, under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the lack of exhaustion of the claim does not prevent a grant of relief.

27. The record outlined in the brief establishes that Mr. Rudenstein was aware of the following facts from the earliest stages of his representation of Mr. Wright: (1) that Ebony Carter had testified in a post-trial hearing for Mr. Bentley and (2) that the trial judge had authored an opinion stating that, had Ms. Carter's testimony been presented at trial, she would have found Mr. Bentley not guilty.

28. Despite this knowledge, Mr. Rudenstein waited five years before informing the PCRA court that Ms. Carter might be able to provide exculpatory testimony, but, by that time, the court was prepared to dismiss the petition.

29. Given the clear importance of Ms. Carter's testimony, the record strongly supports the conclusion that there was no objectively reasonable basis for Mr. Rudenstein not to assert this claim and that the failure to do so precluded Mr. Wright from properly preserving a meritorious claim for federal review.

30. Respondents, without fully conceding the issue, do not contest at this time the record support for Mr. Wright's contention that Mr. Rudenstein was ineffective in his failure to litigate the Ebony Carter issue.

**C. The Record Supports A Finding That Trial Counsel Was Ineffective.**

31. Mr. Wright's claim that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), in failing to investigate the Ebony Carter testimony is virtually identical to the claim asserted by Mr. Bentley and accepted by Magistrate Judge Rice's Report and Recommendation.

32. As Judge Rice found in Mr. Bentley's case, there was no reasonable basis not to introduce Ms. Carter's testimony as it would have directly undermined the prosecution's theory of the case and, as the trial judge found, that testimony would have been sufficient to result in an acquittal.

33. There are only two differences between Mr. Wright's claim and Mr. Bentley's, but neither changes the analysis.

   a. First, Mr. Wright's trial counsel had no knowledge of Ms. Carter's testimony at the time of trial whereas Mr. Bentley's counsel was aware of her

exculpatory information. However, as Mr. Wright's counsel has acknowledged, his failure to consult with Mr. Bentley's counsel was objectively unreasonable.

b. Second, although the trial court's conclusion that it would have acquitted Mr. Bentley upon hearing Ms. Carter's testimony did not reference Mr. Wright, the benefits to Mr. Bentley's defense would have been substantially the same for Mr. Wright given the prosecution's theory from the outset that Mr. Wright and Mr. Bentley acted jointly.

34. For these reasons, the record strongly supports the same conclusion in Mr. Wright's case: that his trial counsel was ineffective and that his conviction and sentence should be vacated.

35. Respondents, without fully conceding the issue, do not contest at this time that the record supports Mr. Wright's contention that trial counsel was ineffective in his failure to investigate Ebony Carter's exculpatory testimony.

**D.     The Parties' Proposed Resolution**

36. Respondents have conceded that the record as it stands now establishes the timeliness of Mr. Wright's habeas petition. Respondents do not offer an outright concession as to the ineffectiveness of post-conviction counsel or trial counsel but do not contest, at this time, that the record produced by Mr. Wright is sufficient for the Court to find in favor of Mr. Wright on both issues.

37. The parties are therefore in agreement, and the Court finds, that further litigation is likely to lead to a favorable merits ruling resulting in the vacatur of Mr. Wright's conviction and sentence.

38. Accordingly, the parties believe that an agreed resolution of this matter is appropriate.

39. The parties have proposed that Mr. Wright's case be remanded to the Court of Common Pleas, that his conviction and sentence be vacated, and that he enter a plea of guilty to third-degree murder for a sentence of 17-to-34 years.

40. The parties agree, and the Court finds, that this agreement represents an appropriate balancing of all parties' interests.

41. Generally, the Court favors agreed resolutions if there is a sufficient record to establish that a habeas petitioner is factually and legally entitled to relief.

42. For Mr. Wright, this result provides certainty and eliminates the need for years of additional litigation while presenting him with the opportunity to seek his release from imprisonment via a parole determination.

43. For respondents, the negotiated agreement avoids the potential outright vacatur of Mr. Wright's conviction and sentence and the need to retry a nearly twenty-year-old case while ensuring Mr. Wright's continued custody and/or supervision in the discretion of the Pennsylvania Board of Probation and Parole.

44. Further, in light of Mr. Bentley's newly imposed sentence and in view of the long-held prosecution theory that Mr. Bentley and Mr. Wright acted jointly and were equally culpable in the crime of conviction, the proposed new sentence ensures equitable treatment of the two defendants and avoids unwarranted disparities in sentencing.

45. The ultimate decision whether to accept the parties' negotiated plea will fall to the Court of Common Pleas and the Court offers no finding or opinion as to whether the Court of Common Pleas should accept that plea. This Court's finding is limited to the conclusion that the

parties' agreement represents an appropriate resolution of the habeas petition, is fair and just, and does not prejudice any party.

46. Should the Court of Common Pleas decide not to accept the plea, under the terms of the parties' agreement and this Court's conditional grant of habeas relief, Mr. Wright will be permitted to return to this Court to continue litigation of his habeas petition. At that time, respondents will be required to determine whether they wish to reopen the record and develop or admit additional evidence to challenge Mr. Wright's allegations of post-conviction counsel's and trial counsel's ineffectiveness. Should respondents decide upon further review or investigation that a concession is appropriate instead, the Court will at that time entertain a request from Mr. Wright to enter an Order and Judgment vacating his conviction and sentence and directing his release from the Pennsylvania Department of Corrections subject to respondents' decision to retry him.

### III. THE DISTRICT ATTORNEY'S OFFICE'S COMPLIANCE WITH THE PENNSYLVANIA RULES OF PROFESSIONAL CONDUCT

47. In addition to reviewing the record as described above, the Court has considered whether the DAO has acted consistently with the Pennsylvania Rules of Professional Conduct in its handling of this case given that Judge Temin and Mr. George were involved with Mr. Wright's prosecution at the trial stage and now work for the DAO. As outlined below, the Court finds that the DAO has complied in all respects with the Pennsylvania Rules of Professional Conduct and that Judge Temin's and Mr. George's employment with the DAO does not preclude the Court from approving an agreed resolution of this case negotiated by the DAO. The Court further finds that there are no legal grounds to disqualify the DAO from the prosecution of this matter.

### A. The Law Governing Conflicts Of Interest For Government Employees

48. "The determination as to whether to disqualify counsel because of a conflict of interest is within the discretion of the court." *Euell v. Rosemeyer*, 153 F.R.D. 576, 577 (W.D. Pa. 1993)(citing *Akerly v. Red Barn Sys., Inc.*, 551 F.2d 539 (3d Cir. 1977). The Pennsylvania Supreme Court has endorsed the Superior Court's "rejection of the 'appearance of impropriety' standard [in *Commonwealth v. Miller*, 422 A.2d 525 (Pa. Super. 1980)] and declined to disqualify [an] entire district attorney's office from representing the Commonwealth when the District Attorney, a former Chief Public Defender, had once represented the defendant in a prior Post Conviction Hearing Act appeal." *Commonwealth v. Boring*, 684 A.2d 561, 564 (Pa. Super. 1996)(citing *Commonwealth v. Harris*, 460 A.2d 747 (Pa. 1983)).

49. "The Rules of Professional Conduct adopted by [the United States District Court for the Eastern District of Pennsylvania] are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, as amended from time to time by that state court, except as otherwise provided by specific Rule of this Court[.]" Local Rule 83.6(IV)(B).

50. The general rule of imputation of conflicts holds that "all attorneys in a firm are prohibited from representing a client when any one of them practicing alone would be prohibited from doing so." *Euell*, 153 F.R.D. at 578 (citing Pa. R. Prof'l Conduct 1.10). However, "former-client conflicts are not imputed to government lawyers associated with the individually disqualified lawyer [who formerly represented a client but now works for the government]." Pa. R. Prof'l Conduct 1.10 cmt., ¶ [7]. Disqualification of lawyers in a firm with former or current government lawyers is governed by Rule 1.11; disqualification of lawyers in a firm with a former judge or other third-party neutral is governed by Rule 1.12. *Id.* at 1.10(f)-(g).

### 1. Rules For Lawyers Serving As Public Officers

51. Rule 1.11(d) states: "Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee . . . (2) shall not: (i) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent[.]" Pa. R. Prof'l Conduct 1.11(d)(2)(i). The Comment to Rule 1.11 states that "*paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen*[4] *such lawyers. . . .* [A] lawyer who has pursued a claim on behalf of a private client may not pursue the claim on behalf of the government, except when authorized to do so by paragraph (d)." Pa. R. Prof'l Conduct R. 1.11 cmt., ¶¶ [2]-[3] (emphasis added). *Accord Euell*, 153 F.R.D. at 578 ("Rule 1.11 does not require disqualification of the other lawyers in the agency in which the lawyer in question has become associated.").

---

[4] Rule 1.0(k) defines the term "screened": "'Screened' denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law." Pa. R. Prof'l Conduct 1.10(k). "Screening" is one element of the set of practices known as "the Chinese wall defense." *See Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1289, 1289 n.2 (Pa. 1992)(Nix, C.J., dissenting)(citing Pa. R. Prof'l Conduct 1.10(a) & (b), which require screening, disqualification of fee collection by the conflicted lawyer, and prompt written notice "to the appropriate client to enable it to ascertain compliance with the provisions of this rule").

Other "factors to be considered in the acceptance of the Chinese wall defense are the substantiality of the relationship between the attorney and the former client; the time lapse between the matters in dispute, the size of the firm and the number of disqualified attorneys, the nature of the disqualified attorney's involvement, and the timing of the wall." *Maritrans*, 602 A.2d at 1289 (Nix, C.J., dissenting)(citations omitted). "Relevant features of the wall itself include the following: a. the prohibition of discussion of sensitive matters[;] b. restricted circulation of sensitive documents[;] c. restricted access to files[;] d. strong firm policy against breach, including sanctions, physical and/or geographical separation[.]" *Id.* (citations omitted).

52. These rules apply to situations where a lawyer who has represented a criminal defendant joins a prosecutor's office. "That lawyer is of course disqualified from participating in the case on behalf of the prosecution. But individual rather than vicarious disqualification is the general rule." *Miller*, 422 A.2d at 529 (quoting *Pisa v. Commonwealth*, 393 N.E.2d 386, 389 (Mass. 1979))(further internal citations omitted).[5] "Rather, courts will look closely at the specific facts of the case and any remedial measures to determine whether any actual conflict of interest exists." *Sims*, 799 A.2d at 857 (citing *Commonwealth v. Faulkner*, 595 A.2d 28, 38 (1991); noting that *Faulkner* found "no conflict of interest where DA's Office hired the defendant's private investigator, where the investigator did not actually speak to anyone in the DA's Office about the defendant's case")(further citations omitted).

### 2. Rules For Judges Serving As Public Officers

53. Rule 1.12(a) provides that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge . . . unless all parties to the proceeding give informed consent." Pa. R. Prof'l Conduct 1.12(a). Rule 1.12(c) states: "If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which the lawyer is associated may knowingly undertake or continue representation in the matter unless: (1) the disqualified lawyer is screened [pursuant to Rule 1.0(k)] from any participation in the matter and is apportioned no part of the fee therefrom; and (2) written notice is promptly given to the parties and any appropriate tribunal to enable it them [*sic*] to ascertain compliance with the provisions of this Rule." The Comment continues: "Notice, including a description of the screened lawyer's prior representation and of the screening procedures employed, generally should be given as

---

[5] The Comment to Rule 1.11 also notes that where a "conflict of interest is governed by paragraph (d)" (*i.e.,* where the conflicted lawyer currently serves as a government officer or employee), the employer "is not required to screen the lawyer as paragraph (b) [of Rule 1.11] requires a law firm to do." Pa. R. Prof'l Conduct 1.11 cmt., ¶ [5].

soon as practicable after the need for screening becomes apparent. Notice must be given to the parties as well as to the appropriate tribunal." Pa. R. Prof'l Conduct 1.12 cmt., ¶ [5].

54. Although Rule 1.11 applies to lawyers who previously represented a party but now work for the government (as distinct from Rule 1.10, which applies to lawyers who work in firms), Rule 1.12 only contemplates former judges who now work for "firms."[6] There is no analogous rule to Rule 1.11(d) that applies to former judges who now work for the government.

55. Rule 1.12(c) requires notice to the tribunal, whereas Rule 1.11(d) does not.

**B.     The DAO's Compliance With The Rules Of Professional Conduct**

56. The DAO has been handling this matter before this Court since 2014 and has prepared and submitted numerous filings in this action. *See, e.g.*, ECF 15, 22, 60, 71.

57. In or around August and September of 2017, prior to the election of District Attorney Lawrence Krasner and before Judge Temin and Mr. George joined the District Attorney's Office, the ADAs within the Law Division assigned to litigate this matter assessed the merits of Mr. Wright's habeas petition and referred the case to the District Attorney's Office Conviction Integrity Unit (or "CIU"; then known as the Conviction Review Unit) for further review, noting Bentley's success on his similar claim of ineffective assistance, and the potential difficulty of retrying this case. The CIU opened a file on this case on September 6, 2017.

58. District Attorney Lawrence Krasner was sworn into office on January 2, 2018. Judge Temin joined the District Attorney's Office as First Assistant District Attorney on January 11, 2018. As confirmed in Judge Temin's Declaration, at no time has Judge Temin been

---

[6] Rule 1.10(c) defines the term "firm" or "law firm": "'Firm' or 'law firm' denotes a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization." Pa. R. Prof'l Conduct 1.10(c).

consulted with regard to this case, nor has she discussed this case with any member of the District Attorney's Office.

59. Mr. George joined the District Attorney's Office as an Assistant District Attorney on February 1, 2018. As confirmed in Mr. George's Declaration, at no time has Mr. George been consulted with regard to this case, nor has he discussed this case with any member of the District Attorney's Office.

60. Notes in the DAO's internal file in this matter reflect that a supervisor flagged Judge Temin and Mr. George's previous involvement in this matter in January of 2018.

61. After Magistrate Judge Lloret held the evidentiary hearing on December 7, 2017, ADA Max Kaufman again "referred" the case to the CIU on February 28, 2018, for assessment and further action, noting that Mr. Wright claimed "that his trial and appellate counsel were ineffective for failing to investigate alleged witness Ebony Carter" and that "*[t]here is a significant likelihood that relief will be granted on this claim*." This referral also noted the involvement at trial of Mr. George and Judge Temin.

62. As part of efforts to assess potential conflicts of interest and ensure compliance with applicable ethical rules, Richard Glazer, Esq., joined the District Attorney's Office in early 2018 as Ethics Officer. In that capacity, Mr. Glazer developed protocols and proposed best practices for assessing and addressing actual or potential conflicts of interest. Those practices were formalized and circulated to all staff in the District Attorney's Office in late May of 2018 after this Court's May 11, 2018 Order granting conditional relief to Mr. Wright.

63. In late May of 2018, Mr. Glazer conducted a training, which included circulation of a formal "Conflict Resolution Protocol" (the "Protocol") that noted that "many, if not most . . . conflict-related matters" will be evaluated "on an ad hoc or case-by-case basis." *Id.* at 5.

64. In conjunction with the Protocol, Mr. Glazer also prepared and provided a PowerPoint presentation titled "Recommended Conflict Screening Procedures." The presentation laid out certain steps to be taken when a conflict was suspected or noted, and described procedures for "screening" of conflicted lawyers in accordance with Rule 1.10(k) of the Pennsylvania Rules of Professional Conduct.

65. On May 29, 2018, Assistant District Attorney Andrew Wellbrock of the CIU contacted Mr. Glazer for further guidance as to the District Attorney's Office's ethical obligations regarding the potential for conflict or the appearance thereof in this matter, noting that the CIU had "marked [the] file with one of the conflict stickers" and "throughout [its] review of the case," had "not discussed it with" Judge Temin or Mr. George.

66. On May 31, 2018, Mr. Wellbrock, acting per Mr. Glazer's direction, notified Mr. George and Judge Temin via separate e-mails that Mr. George and Judge Temin were each respectively "being screened from the CIU review of the above referenced case due to your previous involvement with the case."

67. Mr. Wellbrock's notification formalized what had already been in place since January 2018: that neither Judge Temin nor Mr. George would have any involvement in this matter.

68. Pursuant to Mr. Glazer's further advice, prior to a scheduled status conference in the Philadelphia Court of Common Pleas, Mr. Wellbrock filed a notice in that court on July 25, 2018 (the "Notice"), certifying that Judge Temin "participated personally and substantially as a judge" in Petitioner's state court case, and that she had accordingly been "disqualified and screened from any participation in this matter" in her capacity as First Assistant District

Attorney. The Notice, in an abundance of caution, also referenced Mr. George's previous participation in the case.[7]

### C. The Court's Conclusions Of Law As To The DAO's Compliance With The Pennsylvania Rules Of Professional Conduct

69. Judge Temin and Mr. George have been screened from this matter in a manner consistent with the Pennsylvania Rules of Professional Conduct.

70. No conflict of interest exists based on Judge Temin's or Mr. George's employment with the District Attorney's Office, because 1) the District Attorney's Office's position in this matter was developed before Judge Temin and Mr. George joined the office; 2) Judge Temin and Mr. George have each been screened from any participation in the matter; 3) the District Attorney's Office's position in this matter was finalized without the participation of either lawyer as both were and remain screened; and 4) written notice as required by the Pennsylvania Rules of Professional Conduct has been given to the parties and the relevant tribunals at appropriate times, confirming that Judge Temin and Mr. George have been so screened. Accordingly, the District Attorney's Office has no conflict of interest in this matter.

71. Moreover, even if there were a conflict of interest, the provisions of Rule 1.12(a) may be waived should "all parties to the proceeding give informed consent." Pa. R. Prof'l Conduct 1.12(a). The Court concludes that Mr. Wright has provided informed consent.

---

[7] Rule 1.12(c)(2) of the Pa. R. Prof'l Conduct does not require such notice be provided to the parties and the tribunal regarding former participation as defense counsel rather than as "judge or other adjudicative officer, third-party neutral (including arbitrator or mediator) or law clerk to such a person[.]" Pa. R. Prof'l Conduct 1.12(a). The Notice nevertheless likewise affirmed that ADA George had, like Judge Temin, been "disqualified and screened from any participation" in the matter.

72.   The Court finds that the District Attorney's Office has complied with the provisions of Rules 1.9, 1.10, 1.11, and 1.12 of the Pennsylvania Rules of Professional Conduct as Judge Temin and Mr. George have been screened from this matter at all relevant times.

73.   Applying the Pennsylvania Rules of Professional Conduct and applicable case law, there is no legal basis to disqualify the Philadelphia District Attorney's Office from participation in this matter. Moreover, all relevant parties have consented to and thereby waived any claims premised upon any actual or potential conflicts of interest.

## IV.   SUMMARY OF THE COURT'S FINDINGS

74.   This Court has carefully reviewed the record of this case, including the parties' legal submissions, the transcript of the December 7, 2017 evidentiary hearing, the Report and Recommendation entered in the Bentley habeas proceedings, and the relevant case law.

75.   Based upon that review, the Court has found that:

   a. Mr. Wright's habeas petition was timely filed in this Court. Equitable tolling of the relevant statute of limitations is appropriate in this case in view of the testimony showing that Mr. Wright did not receive notice of the Pennsylvania Superior Court's decision affirming the denial of Mr. Wright's PCRA petition, and, in any event, time-bars in federal habeas actions are nonjurisdictional, may be waived as a defense by the respondent, and need not be considered by the Court if so waived. *See Day v. McDonough*, 547 U.S. 198, 205-11 (2006);

   b. This Court has jurisdiction to hear and adjudicate the claims presented in Mr. Wright's habeas petition, including his claim that his trial counsel was ineffective.

c. Were the Court required to make an express finding on the merits issues presented in the petition, the evidence supports a finding that Mr. Wright's counsel was in fact ineffective in violation of Mr. Wright's Sixth Amendment rights, in that counsel neglected to investigate and call to the stand a witness, Ebony Carter, who would have provided material and exculpatory testimony, and, further, that Mr. Wright's post-conviction counsel was ineffective in failing to properly litigate this claim in post-conviction proceedings.

d. As such, the record of the case supports a grant of habeas relief to Mr. Wright, including the vacatur of his conviction and sentence.

76. The parties have entered into a Stipulation and Order concerning a resolution of this matter. That Stipulation and Order provides that Mr. Wright's habeas petition should be conditionally granted and that the case should be returned to the Court of Common Pleas where, subject to that court's approval, Mr. Wright's conviction will be vacated and where Mr. Wright will enter a guilty plea to third-degree murder for a sentence of 17-to-34 years' imprisonment. The parties also agree that if the Court of Common Pleas elects not to impose this agreed sentence then Mr. Wright will be permitted to reopen his habeas petition in this Court where Mr. Wright can pursue outright vacatur of his conviction and sentence and release from the Pennsylvania Department of Corrections. The Court finds that this Stipulation and Order represents a fair and appropriate resolution of this matter.

77. The Court finds that the Philadelphia District Attorney's Office has complied with all obligations under the Pennsylvania Rules of Professional Conduct and that there is no basis to preclude that office from entering into the Stipulation and Order. The Court further finds that there is no legal or factual basis to disqualify that office from prosecuting this matter.

**V. ORDERED RELIEF**

78. Based on the foregoing, the Court enters the following **ORDER**:

    a. The Court's Order of May 11, 2018 (Doc. 90) and the Court's Judgment of May 11, 2018 (Doc. 91) are **VACATED**.

    b. Petitioner Jamal Wright's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **CONDITIONALLY GRANTED.**

    c. Within 180 days of the entry of this Order, the Court of Common Pleas shall make a final determination whether it accepts the Stipulation and Order proposed by the parties providing for (i) the vacatur of Mr. Wright's conviction and sentence, (ii) the entry of a guilty plea to third-degree murder charges; and (iii) the imposition of a sentence no greater than 17-to-34 years imprisonment.

    d. Should the Court of Common Pleas accept the parties' proposed agreement, the parties shall jointly notify this Court to terminate these proceedings.

    e. Should the Court of Common Pleas decline to accept the parties' proposed agreement, the parties shall jointly notify this Court and provide the Court with their positions as to further proceedings concerning Mr. Wright's request for an outright vacatur of his conviction and sentence.

    **BY THE COURT:**

    _____
    **WENDY BEETLESTONE**
    **U.S. DISTRICT JUDGE**